All right, Mr. Kreider, whenever you're ready, again. May it please the Court. Labeling a cause of action negligent misrepresentation is immaterial and irrelevant. As the Texas Supreme Court held in Yonkin at page 682, a plaintiff's characterization of the conduct is immaterial. This Court and the District Court must look beyond the characterizations of the activity and focus on the conduct at issue. This Court in Troyes found immunity because the lawyer's conduct involved what this Court called classic examples of lawyer's conduct in representing a client. Schiff's conduct in this case is immune because it involved classic examples of an attorney's conduct in representing a client and was not foreign to the duties of a lawyer representing the client. The trouble I have is it seems like McCamish involved classic lawyerly duties, coming up with an opinion letter in connection with—do you think McCamish is overruled or how can you distinguish it? I don't think that this Court has to find McCamish is overruled to distinguish it. The facts are quite different. For one— How is it not? I mean, you think the overarching principle—and I agree with the recent Texas Supreme Court case that say that you look at whether it's this classic part of a lawyer's job. How is that not the case in McCamish? In McCamish, it said that the paradigm of a section 552 claim, negligent misrepresentation claim involves an incorrect opinion letter, a written opinion letter. And what was involved in McCamish was the lawyer acting as a principal. He signs this document as a principal, not on behalf of the client, but he signs it as a principal, then he gives the wrong legal opinion that the settlement agreement was enforceable when it was not. Ironshore's complaint does not claim that Schiff gave an opinion letter. It says in paragraph 15 that it gave oral, and Schiff gave oral and written reports. Paragraph 16, they were litigation summaries. Paragraph 45, their status reports. What Ironshore complains is that Schiff said, we'll keep you fully up to speed, but didn't. That's an omission, and omissions aren't legal opinions. And so McCamish does not have to be overruled. Attorney immunity was not even raised there. The sole issue— But the distinction you're making, and maybe it is a distinction, but a valid one, but it's not distinguished on whether it's part and parcel of a lawyer's typical functions. I mean, it just seems like what happened, which seems to be the principal, and it just seems to me like McCamish was part and parcel of what lawyers do. But what was different, and if you look at— You're saying because it wasn't for the client? It was not for the client, and it involved an express, written legal opinion. And that is not what we have here. The Supreme Court, through Kenny Hanger and Yonkin, has given what seems to be, they call, a non-exclusive list of conduct that is outside the scope of the defense. One thing that I think is important is there are no exceptions to the attorney client, to the attorney immunity doctrine. There's not a fraud exception, a litigation exception. There's not a negligent misrepresentation exception. It's conduct the lawyer engages in that is foreign to the duties of an attorney. And the example is that was directly participating in a transaction in which the lawyer has some pecuniary or ownership interest or signs onto the deal. That was involved in Kelly. There was a pecuniary interest that the lawyer had in McCamish. The lawyer was both a principal and a signatory. The actual footnote in Canty-Hanger, when they distinguish McCamish, says it's about a duty based, really based on the fact that a non-client's going to rely. Well, but that footnote 7 in Canty-Hanger, to which I think you're alluding, it never held or suggested that a negligent misrepresentation claim is somehow exempt from attorney immunity. It simply did not. It merely stated the obvious that the plaintiffs in Canty-Hanger didn't raise such a claim. And I think if you go back to Canty-Hanger at page 484 in the Yonkin decision, it says there's no exception. It's only types of conduct that are foreign. And Your Honor, this is not- If we think there's some tension or it's hard to reconcile some of the Texas Supreme Court cases, should we certify it to the Texas Supreme Court? I don't think the court needs to. I think that based on what we already have with Canty-Hanger, Yonkin, Troyes, Kelly, this court can see that as a matter of law, the conduct at issue here is a classic example of what lawyers do on behalf of a client. And Ironshore, in its brief, concedes at page 53 that Schiff's business was, quote, the representation of Dorrell in the underlying lawsuit. Schiff's business was representing that client, and what they're complaining is you did it improperly. And Yonkin, at page 682, says a complaint that something is done improperly, incorrectly, or even wrongfully, does not take it outside the scope of what a lawyer does for his or her client. And Schiff met its burden here by proving that its conduct was just part of representing Dorrell. And to have Ironshore claim in paragraph 15 of the amended complaint that Schiff's conduct in providing information in the same lawsuit that they say its business is representing Dorrell was somehow outside the duty of a lawyer can't defeat immunity. That's a mere label. It's a characterization. And with no supporting facts, it's not even entitled to consideration by this court under Iqbal and Tomboy. Where I think the district court made an error, and where this court can correct it reviewing this de novo, is that the district court found that negligent misrepresentation claims categorically are outside the scope of attorney immunity. He made an eerie guess that was unnecessary. Contrary to Yonkin's guidance, the district court focused on immaterial label and characterization of the claim as a negligent misrepresentation claim and not looking at the conduct itself. And if the conduct is what lawyers do, and it's not foreign to the duties of a lawyer, then this court must find, as a matter of law, there's no fact issue that it is within the ambit of the defense. And if you look at it, it is a matter of law. This is why I also think the court need not certify this. Yonkin says at page 683 that the only analysis you need to make is to look at whether there's an attorney-client relationship, which is clear here. And then you look at the conduct, which is undisputed, really, what happened here. And then, according to Yonkin, the court decides the legal question whether the conduct was in the scope of representation. So the guidance is here. The Supreme Court in Yonkin has given further guidance that Judge Gilstrap did not have below, and this is a matter of law for the court to decide, is this what lawyers do within the scope? And Ironshore has really conceded that Schiff's business was representing Dorrell in this lawsuit. It's all that's left. I know the district court threw out a lot of the allegations. It's all that's really left, the comments, the discussions about, you know, the settlement value and the settlement negotiations. Is there anything else? Largely what is left is some of the things about settlement value, exposure, whether Schiff conveyed some but allegedly not all settlement offers. Those would be the things that would be left in the case, but all of those were part of what Schiff did in connection with representing his client and are clearly not foreign to the duties of a lawyer. They're not an assault. They're not theft. They're not directly participating in a transaction. I think that the LJH case that we cited to the court is a post-Cantyhanger case that shows the right way to do it. The district court looked as a matter of law, saw that the individual lawyer who was a direct participant and had a pecuniary interest in the transaction, like the guy in McCamish, could not get out on attorney immunity on a motion to dismiss, but the law firm, the same law firm, would get out on the motion to dismiss because a law firm has one business. That's practicing law. That's what Ironshore has said that Schiff was doing was practicing law. Did Schiff in any way assure the excess carrier that it would keep them advised of any settlement offers? There is a, well, not specifically of a settlement offer. What Ironshore has pled is that Schiff told them that they would keep them fully up to speed but didn't. And does that matter? No, Judge Davis, because what the Supreme Court of Texas said in Yonkin is, if you say that someone did it incorrectly, improperly, or in this case, you didn't give the update, the information, that's just a claim you didn't do enough. It's not a claim that what you were doing is something lawyers don't do or something that is foreign to the duties of a lawyer. They're just complaining you didn't do enough. And what's important, and I'll come back to one of Judge Costa's original questions here about McCamish, this is not an opinion letter case. If you look at, and the Texas Supreme Court hasn't addressed whether attorney immunity might survive against, might wipe out a, excuse me, legal opinion case, but legal opinions are very different than a litigation summary and update. Nobody would claim. Thousands of Texas lawyers every day give reports to their client's insurance carrier. It's so common that it's entitled to work product protection under state and federal law. But when you have an opinion, it's something very different. We litigators, trial lawyers, generally don't do it. It's business lawyers. And the ABA and the Texas Bar Business Association committees have detailed guidance on what lawyers do to have an opinion. And generally, if you have an opinion, it may be outside the scope because a lawyer is taking on that duty by himself. But legal opinions have a formal structure. They give a written legal opinion on behalf of the law firm acting as a principal, not on behalf of the client. It gives a legal conclusion about how substantive law applies to specific existing facts or assumptions. You will not find that here. It did not happen. There is no legal opinion. They didn't give an opinion about what he thought the case was worth. Well, saying that there could be a range is not a legal opinion. Texas cases say that's not even something that will support a negligent misrepresentation claim. I mean, the kind of opinion that Section 552 contemplates is something like a title opinion, whether a lien is enforceable, a tax opinion, opinions about securities laws. Here, this is not an opinion letter case. Ironshore does cite a couple of cases that involved alleged opinion letters. None of them involved attorney immunity, and none of them had the kind of conduct that's at issue here. So Your Honor, we think that the Court properly can de novo look at the record, see that it is undisputed what Schiff did, make the conclusion as a matter of law that what Schiff did was within the scope of its representation of Dorrell in this lawsuit, and that nothing was foreign to its duties. So we would respectfully urge the Court to find that Schiff's conduct is immune from suit to reverse the District Court and to render a take-nothing judgment. All right. Thank you. You've saved time for rebuttal. Mr. McIntyre, whenever you're ready. Yes, sir. Good morning. Good morning. May it please the Court. My name is Sonny McIntyre. I do represent the appellee, Ironshore. I'd like to reframe the issues for the Court because there could be no doubt that what the appellant is urging is an overruling, an abrogation of the McCamish case, which Kenny Hanger has very clearly indicated is not Texas law. Kenny Hanger very clearly indicated it was not overruling McCamish, and Texas law remains robust that McCamish is good law. What they have missed, what the appellant is missing, are the elements of a viable 552 claim. It's invited reliance. It's encouraged reliance. It is a manifest awareness that the non-client is relying. That's the synchronon of a 552 claim, and that's what Kenny Hanger said. A new duty, an independent duty, is being created. In McCamish, there was actually an adverse relationship, an opposing counsel and a plaintiff requiring an opposing counsel to make an affirmative representation. He did so and invited the reliance on that representation because he changed the nature of the relationship. The character of the relationship between the lawyer and the non-client had suddenly changed because of three things, invited reliance, encouraged reliance, and manifest awareness of that reliance in the guidance of the non-client and his business or his business affairs. That's the difference here. To argue . . . What if Schiff . . . what if the evidence . . . I mean, this is purely hypothetical, but the evidence came out that this was an outright fraud. The lawyers at Schiff got together and said, boy, we really need to pat our billings. We don't want this case to settle. Let's mislead everyone about the settlement value of this case because we just need to pat our billings. You know, outright fraud. Would there be immunity? No. Well, let me make sure the hypothetical is clear in my own mind. As part of that fraud, if they had stepped out of the bubble and stated, and Irenshaw, we want you to rely upon our representations, knowing that they were false, we invite you to rely upon our representations, immunity would not exist. And that's what the Supreme Court is trying to tell us. The Yunkin case that is so heavily relied upon in the reply brief does not further inform the discussion. That was an anti-SLAPP case. And ultimately, they addressed the attorney immunity issue, but not once do they refer to McCamish. Not once do they refer to a 552 claim, to the invited reliance, the encouraged reliance. I will suggest this, however. They do cite approvingly to a portion of Cantney-Hanger that there are some types of conduct of a lawyer that fall outside of attorney immunity. And they refer specifically to certain pages within Cantney-Hanger. If you go to those pages, you find a footnote number seven. And footnote number seven is the McCamish case. That is why this is different. This is a 12B6 proceeding. The same question I asked the other side, do you think there's any need to certify the question of the Texas Supreme Court of the viability of McCamish? I believe that this is not a tough or challenging eerie guess. I had a case a couple years ago that was asked at oral argument. Both sides, as they did today, said no, no, we easily win. Then we ruled. Then the side that lost files a petition for re-hearing saying this is the perfect case for certification. And you can guess how that went over. So, all right. We've got your positions, though. We will certainly not oppose it. I don't think it's necessary, Your Honor, in the sense that for a Texas Supreme Court to overrule a Texas Supreme Court case, we need something more firm. This is a weak argument that's being advanced here. McCamish is robust law. There is not a single case that has been cited by the appellant that criticizes McCamish. There is not a single case, and I think it can be wrapped up in one succinct point. There is not a single Texas case that they have cited that holds that attorney immunity is available when the lawyer invites, encourages reliance from the non-client. Tell me what the letter said. Was it in writing, what the lawyer told your company? Specifically in the context of this case, paragraphs 3, 4, 16, and 15, I believe, of the amended complaint identify what was said, and I can refer specifically. There were email communications that indicated that our reports are designed to allow all to gauge the timing and exposure that the cases represent from a business perspective. That's essentially what Section 552 is intended to control, because Schiff Harden is providing information to my client, Ironshore, for the guidance of Ironshore in its business decisions. That's where the new duty is created. Footnote number 7 is a compelling footnote, because it's not just saying, hey, this case is out there. Maybe we'll come back and visit it again. There's an inherent conflict between, like the primary carrier, like this insured here was a self-insured up to whatever the limit was. We don't believe there was any inherent conflict at all. Well, I mean, there's always a desire for the primary to maybe try the case, if they think they got a good shot at it, rather than pay an amount up close to their limit. So, to that extent, I think there's always a conflict between primary and excess. Well, certainly in a 12B6 setting, that is not anything that is in the operative pleadings for a 12B6 de novo review, but I would suggest this. There was no antagonism here in the following respects, because also in paragraph 16, Schiff Harden says, we are here to provide whatever information you need whenever you need it. So this is an actual enticement, Your Honor. This is an invitation to come rely upon our information. And in that respect, there can be no question we have stated a viable 552 claim. Now perhaps a jury may decide that we did not justifiably rely, but that's a fact issue for a jury. The issue here is whether we have stated a viable 552 claim, and we have, and they don't even address the elements of our 552 claim, in all frankness. To be clear, the Supreme Court has had multiple opportunities to limit, clarify its holdings in McCamish. In 2014, in the L.A. InnCase, it again restated the holdings of McCamish. In 2010, in the Grant Thornton case, it actually referred to McCamish as the guiding light for negligent misrepresentation cases against professionals. It remains the guiding light. And if it's not the guiding light, then the Supreme Court has to tell us more clearly that that light has been extinguished, because it hasn't. And for purposes of the guidance of the court below, in a 12B6 setting, the court did exactly what the court should have done. He recognized some tension, but he identified and recognized and realized that McCamish is the guiding light. Because, what would you do with bond counsel, lawyers signing compliance letters and merger transactions, knowing that they're being paid by their client to do this? There's no doubt in my mind, to answer one of your questions, in McCamish, a classic example of what the lawyer's doing, there's no doubt in my mind in McCamish, the lawyer was being paid by his client to sign the settlement agreement. But that's not the test. The test is whether the lawyer steps outside the bubble and does something affirmative or proactive. And that's what happened here. And that's not something that is addressed in any of the cases that the appellant cites. We very clearly set forth factual allegations showing that an independent duty has been created. That independent duty allows my claim to go to a jury. This case is fully developed. The appeal was taken, literally, within 35 days before our trial setting. The court waited for its own reasons before it issued its order. This case has been discovered, experts have been prepared, disclosed, designated. This case is ready to go to trial, and my client is entitled to go to trial because we have stated a viable claim. The court, in a de novo review of a 12B6 ruling, must assume that all plausibly pled facts are true. The court, in a 12B6 setting, is to indulge all inferences favorably to my client. And when that is done, we have a 552 claim. And that has not been upset by anything that has been addressed by the appellant. The McCamish case also cited approvingly Section 51 of the Restatement 3rd of the Law governing lawyers. Section 51 states that a lawyer owes a duty to a non-client. A lawyer owes a duty to a non-client when and to the extent that the lawyer invites the non-client to rely on the lawyer's opinion or provision of other legal services and the non-client so relies. That was the source that gave the McCamish court the basis to establish that an independent duty has been created. And that duty existed here. The Fifth Circuit cases that I would like to refer to very briefly. There was a recent case, the Johnson v. Ashmore case. And the Ashmore case, again, that was not a 552 case. There was an antagonistic adverse relationship between the non-client and opposing counsel. That was a 12B6 proceeding. But there was no discussion of invitation to rely. There was no discussion of encouraged reliance. And there was no discussion of manifest awareness of reliance. What are your best Texas cases since Canty-Hangler that have applied McCamish? There have been several cases that have talked about McCamish that I recall. I don't think there's ever been a post-Canty-Hangler case to respond to the court. I don't recall a specific McCamish case published that deals with a lawyer setting since Canty-Hangler. There was one case, the Dixon Services case. And I can't recall whether that was before or after Canty-Hangler. It addressed a 552 claim. But there was no discussion of invited reliance. And there was no discussion of encouraged reliance in that particular case. The Kelly v. Nikoboff case, that's a Fifth Circuit case. That's a 2017 case, and it bears mentioning at this time. In that case, that was also de novo review. The court, in an attorney immunity case, the court determined that it would not grant or support the dismissal under 12B6 because the appellant, excuse me, the attorney in that case could not conclusively show entitlement to immunity. Well, it's the appellant's burden to show conclusively under this court's precedent an entitlement to immunity, and it's not done so. It can't. In all due respect to appellant, the law here is clear. He can't. The test here, it bears reinforcing. The test here is not a simplified test, the two-pronged test as suggested by appellant. Appellant wants you to think that if the conduct was the type or kind which is routine for the lawyers to engage in and there was an existing attorney-client relationship, that's all we need to discuss. He, the appellant identifies Yunkin for that proposition. But if you go to Cantyanger, which is referred to in the Yunkin case,  the simplified two-pronged test does not apply here. Ultimately, it is irrelevant whether it's in the Corson scope. Ultimately, it is irrelevant whether it's the type or kind engaged in by lawyers routinely. The issue is the elements of the 552 claim invited in court. If it would have been against the interest of his client to advise your client that a settlement offer had been made within his deductible, would he be liable if he didn't advise you of that offer? If it was against the best interest of his client? Yes. Having, he has a conflict then, because having already invited our reliance, having already encouraged our reliance on his reporting, he had an obligation to disclose the material facts. So he has a situation. And I would suggest in response to your question, once he has encouraged us to rely upon the information he is providing, he then has a duty of affirmative disclosure if he knows that prior disclosed facts are no longer correct or true. And that is Texas law. And so once his prior statement is learned to be false or incorrect, he has a duty to update it. That's not the facts here, by the way. There's no evidence in the record to suggest that that actually occurred, but I'm responding to your question hypothetically. So the simplified test is not applicable. To indulge appellant to apply that test would abrogate McCamish. And again, I refer to bond counsel. They're being paid by their client when they issue bond underwriting letters. Compliance letters that you see in these big closing books, in real estate transactions or merger transactions, they're being paid by their client to provide that information. It's related to their client, but they're stepping outside of the bubble and they're actually knowing, manifest awareness, that a third party, whether it be the other side, a counterparty in a merger or a bond purchaser, they know that there's reliance and they're inviting it. I want to talk about policy issues very briefly. Although I did not hear a lot of policy discussion in his oral argument, in appellant's oral argument, it is briefed. There's a suggestion that somehow by affirming the trial court, we're going to chill an attorney-client relationship or we're going to impede zealous advocacy. I would suggest to you that every one of the policy issues identified by appellant have already been weighed and measured and rejected by the Texas Supreme Court in the McCamish decision. All those issues were raised in McCamish because a lawyer can limit the audience to whom the information is provided. In this case, it was an audience of one, so he's minimizing risk. The lawyer providing the information under the restatement can condition how the reliance is to occur. You could say, you are not entitled to rely upon this. We encourage you to get independent counsel. A lawyer can do that. A lawyer is actually pretty foolish to make the offer to you that he did, isn't he? I mean, he has nothing to gain by doing that. Well, he could have lots to gain. Motivation, of course, is not an element of a 552 claim. I'll suggest to you that the record below has evidence of what the motivation was,  but there are lots of things a lawyer could be hypothetically interested in doing. Cultivating a long-term relationship with an insurance company is one. There are lots of law firms that have multiple insurance clients, and they want to maintain the cash flow in the business and defense policies. So there are lots of motivations, but when lawyers prepare an audit response to an accounting firm, they limit, under the ABA rules, they limit how the audit opinion is going to be received. I know that lawyers, when they're interfacing with insurance companies, they can say that you are encouraged to secure independent counsel, should you wish. These are our evaluative opinions. We may be wrong. We may be incorrect. So there are a variety of ways that you can control and minimize the risk, and it does not impede zealous advocacy. This is not a situation where we're, in our case here, this is not a situation where we're dealing with an opposing counsel. There's no adverse relationship here. So we're not impeding Schiff's Hardin's right ability, capability, of zealously advocating the interests of his client in the case, the trial, the product liability case. Zealous advocacy is not an issue. So the policy considerations that have been raised by the appellant don't apply in this instance. We believe that, more than believe, we believe Texas holds that course and scope becomes an irrelevant inquiry when you step outside of the bubble into the 552 realm. We believe that it's no longer within the course and scope for a lawyer to step out and independently create a new independent duty, and that's what is at issue here, and that's what the trial court below found. I think that the consequences, the negative consequences of rejecting or somehow overruling the court below is you're going to send very difficult signals to the insurance community. You're going to send very difficult signals to lawyers dealing with insurance companies. You're going to send difficult signals to lawyers who are issuing bond compliance letters. It seems to me that what the Supreme Court has done is it's constructed a very significant framework in which to hold lawyers accountable if they go outside and actually encourage and invite reliance. That's the grovelment of our claim. That's what makes our claim different than theirs. This is not a matter of just characterization of the conduct. This is the grovelment of the claim. Counsel would like to cite the Yunkin case is we ignore characterizations. Well, we cannot ignore the allegation of a separate independent invitation and encouraged reliance because that's what makes our situation completely different. If the court was overruled, then perhaps insurance companies in every single instance would have to go out and hire a monitoring counsel, even if they're paying defense dollars for the insured defense. Well, if the lawyer puts an exception in his promise to you that you said would be able to reserve it, then that's what you'd have to do. The lawyer should limit or condition the, the scope of the reliance if he wishes to do so, yes sir, your honor. And failing to do that, there were no disclaimers here. There are no limitations. And certainly in a 12B context, there's no evidence in our pleadings or in the pleadings before the court or the court below suggesting that there was any type of limitation or conditioning. Thank you very much. All right. Thank you, counsel. Mr. Pryor, you get the last word. Yunkin says you ignore labels and characterizations. Iron Shore ignored Yunkin. Didn't even mention it. And the reason they didn't is because it sinks them. Characterizations and labels are irrelevant. What this court needs to do is to look at whether these are classic examples of what lawyers do and whether what Schiff did is somehow foreign to the duties of representing the client. In a case in which Iron Shore admits that Schiff's business was representing the client Durell. This court doesn't have to overrule McCamish or evaluate the elements of the Section 552 claim. Judge Costa, you had a hypothetical, and I think just to respond in part to the hypothetical you had, it makes no sense that a lawyer is immune from intentionally fraudulent statements and yet could be liable for a merely negligent statement based on the same purported facts. And that's one of the reasons why the Supreme Court has said, you don't have to get into all that. You look at whether this is the kind of thing that lawyers do and whether it's foreign to the duties of a lawyer. Now, Iron Shore pleads no set of plausible facts why in the world Schiff would communicate with them other than as part of representing Durell. And under Caney Hanger and Yunkin, we proved that it's part of our engagement and if it's part of the engagement, you've met the burden. Now, it's really disingenuous for Iron Shore to say there's no adversarial relationship when they demanded that Schiff provide information and claimed that Schiff's conduct materially breached the insurance contract. It is inherently adversarial at times between an insurance company and its carrier. It doesn't seem even on your argument, there does have to be more to it than just whether it's the type of thing lawyers do. Because I'll come back to McCamish, the opinion letter. When you were up for the first time, you said these opinion letters are highly regulated by ABA groups and so these transactional lawyers, I mean, that is part of what they do. So it does seem, I know you tried to distinguish it on the principal agent, but so it does seem there's more to it even on your view than just is it what lawyers typically do. Well, there could be. There may be an instance, they were talking about a bond lawyer giving a bond opinion. You will not find this here. Judge Davis was asking the same question. Was there an opinion letter? There is no such letter. And that's really what McCamish says, an opinion letter, a written opinion letter is the paradigm of a 552 claim. That's not what we have here. And there's no post-Cantyhanger case that they cite that says negligent misrepresentation survives immunity in any way. One final thing here, Your Honour. There's no reason for these lawyers to have dealt with the insurance company other than on behalf of the clients. They never stopped representing the client, Dorrell Insurance, Dorrell Juvenile Products Company at any time during the case. And the policy here is that if you allow insurance companies to sue lawyers for their routine communications, which they do every day, subject to work product, and have done for decades, it will mean that lawyers will no longer provide any information to an insurance company. And this is exactly what lawyers do. It is not a 552 legal opinion letter like you would have in McCamish. So for these reasons, Your Honour, we respectfully urge the court to reverse the trial court below and to enter a judgment and shift statement. Thank you. All right. Thank you. Thanks to both sides for their argument. And the court is adjourned.